IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Timothy V.,[1]                                    No. 6:23-cv-00341-HZ

                 Plaintiff,                    OPINION & ORDER

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                 Defendant.


Mark A. Manning
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette St
Eugene, OR 97401

Alan Stuart Graf
Alan Stuart Graf, PC
825 Merrimon Ave, Ste C
Asheville, NC 28804

       Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Kevin C. Danielson
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Katherine B. Watson
Office of the General Counsel
Social Security Administration
6401 Security Blvd
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Timothy V. brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits ("DIB") and supplemental security income

("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on October 24, 2019, and SSI on January 4, 2019, alleging an

onset date of October 20, 1988. Tr. 208-213, 238-239.[2] He later amended the alleged onset date

to March 6, 2015. Tr. 13. Plaintiff meets the insured status requirements of the Social Security

Act through June 30, 2025. Tr. 15. His application was denied initially and on reconsideration.

Tr. 13.

      On April 4, 2022, Plaintiff appeared with counsel for a hearing before an Administrative

Law Judge ("ALJ"). Tr. 13. On April 21, 2022, the ALJ found Plaintiff not disabled. Tr. 21. The

Appeals Council denied review. Tr. 1.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 8.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fetal alcohol syndrome and the effects of a broken ankle and leg. Tr. 277. At the time of his amended alleged onset date, he was 27 years old. Tr. 20. He has at least a high school education and no past relevant work. Tr. 20.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his amended alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "left ankle osteoarthritis, status post ORIF; and fetal alcohol syndrome." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [H]e can perform tasks involving up to 6 hours of sitting, and up to 4 hours of standing/walking in an 8-hour workday (with normal breaks). He can occasionally climb ramps or stairs, but he can never climb ladders, ropes, or scaffolds. He can occasionally kneel, crouch, or crawl. He can understand, remember, and carry out simple routine tasks at a reasoning level of 2 or less involving simple work-related decisions. He can tolerate occasional interaction with co-workers, supervisors, or the public. He would be off-task up to 10 percent of the 8-hour workday beyond normal breaks.

Tr. 17. The ALJ found that Plaintiff had no past relevant work. Tr. 20. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform, such as "small parts assembler," "marker," and "electrical accessories assembler."

Tr. 21. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ argued by (1) rejecting the medical opinion of Dr. Emil

Slatick, Ph.D., and (2) failing to include all relevant limitations in the RFC. Pl. Op. Br. 1, ECF

12. The Court concludes that the ALJ did not harmfully err.

## I.    Medical Opinion Evidence

For claims filed on or after March 27, 2017, ALJs are no longer required to give

deference to any medical opinion, including treating source opinions. Rules Regarding the

Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On May 2, 2018, Dr. Slatick performed a psychological evaluation of Plaintiff. Tr. 378-386. The evaluation relied on an interview with Plaintiff, information from Plaintiff's sister, a review of records, the Weschler Adult Intelligence Scale, and the Adaptive Behavior Assessment System. Tr. 378. Dr. Slatick stated that Plaintiff arrived on time and adequately groomed, and was pleasant and cooperative. Tr. 378. But Plaintiff's "[p]resentation was somewhat atypical

based on expressive communication skills, social behavior, and content of thought." Tr. 378. "A mild speech impediment was noted." Tr. 378.

Plaintiff was diagnosed with fetal alcohol syndrome in 1991 and has been diagnosed with fetal alcohol spectrum disorder. Tr. 379. His sister stated that Plaintiff developed speech after age three and has a lasting speech impediment due to abnormalities in his mouth and jaw. Tr. 379. Plaintiff's sister reported that Plaintiff struggled with giving verbal instructions involving two or more steps, answering complex questions that require careful thought and opinion, distinguishing truthful from exaggerated claims, reporting stories or jokes correctly after hearing them, talking about realistic future educational or career goals, stating general addresses of travel destinations, and using a phone to make appointments. Tr. 379. Plaintiff stated that while he had been hyperactive as a child, he was no longer hyperactive and no longer failed to pay attention. Tr. 379.

Plaintiff's family reported that if Plaintiff does not work, he spends his time playing video games. Tr. 379. He typically does not leave the house or socialize with anyone. Tr. 379. He does not engage in basic hygiene and grooming without daily reminders. Tr. 379. He requires constant monitoring and support to perform tasks such as vacuuming. Tr. 379. He finds public transit confusing and overwhelming. Tr. 379. He eats junk food if he is left in charge of his own meals. Tr. 379. He struggles to manage money. Tr. 379. He does not ask for help and instead pretends that a problem does not exist, and he does not appear to be able to think critically in terms of cause and effect. Tr. 379. He does not know to only obey requests from other people if he knows and trusts them. Tr. 379. Plaintiff reported that he was trying to become more social but that interpersonal relationships were difficult for him because he was easily hurt. Tr. 380.

A 2007 record indicated that Plaintiff's IQ was 88. Tr. 380. His family told Dr. Slatick that they believed he would require long-term support and would benefit from living in a group home. Tr. 380. Plaintiff was diagnosed with depression in the past and prescribed Zoloft. Tr. 380. He told Dr. Slatick that he was a happy person but had periods of depression in school. Tr. 380. He also had some past suicidal ideation and tried to choke himself once, but this was no longer an issue. Tr. 380.

Plaintiff stated that he graduated from high school with a regular diploma. Tr. 380. His coursework was modified. Tr. 380. He attended community college for a time and then dropped out. Tr. 380. Plaintiff's sister reported that Plaintiff struggled to do basic tasks such as finding phone numbers, recording dates and times of appointments, measuring length and height, writing letters and emails, checking the accuracy of a bill, checking change after paying with cash, and completing forms for business services. Tr. 380.

At the time of the evaluation, Plaintiff had been working at Whole Foods as a janitor for a few weeks. Tr. 380. He previously worked as a dishwasher, cashier, and courtesy clerk. Tr. 380. He stated that he did not drive and indicated no desire to drive. Tr. 380.

Dr. Slatick assessed Plaintiff's cognitive abilities using the Wechsler Adult Intelligence Scale. Tr. 381. Plaintiff's verbal comprehension was average, his perceptual reasoning was low average, his working memory was average, and his processing speed was borderline. Tr. 381. His overall score was low average. Tr. 381.

Dr. Slatick assessed Plaintiff's adaptive abilities using the Adaptive Behavior Assessment System. Tr. 383. Plaintiff received a General Adaptive Composite score of 650. Tr. 383. According to Dr. Slatick, Plaintiff's "current overall level of adaptive behavior is in the Extremely Low range[.]" Tr. 383. The assessment covered the areas of communication,

academics, self-direction, social and leisure activities, community and home living, health and safety, and self-care skills. Tr. 383. Plaintiff scored as Extremely Low in all areas. Tr. 383-384. Dr. Slatick explained that Plaintiff was lower functioning than almost all individuals his age. Tr. 384.

Dr. Slatick stated, "Symptoms and behaviors consistent with the impact of Fetal Alcohol Spectrum Disorder were indicated by [Plaintiff's] in-session behavior, his report of symptoms and behaviors, his family members' report of symptoms and behavior going back to early childhood, and the results of testing[.]" Tr. 385. Medical records confirmed that Plaintiff was exposed to alcohol and drugs in utero. Tr. 385. Dr. Slatick diagnosed Plaintiff with Fetal Alcohol Spectrum Disorder. Tr. 386. He opined that Plaintiff would have lifelong deficits due to the disorder, "and he will require ongoing support in the areas of functional education, employment, self-care, and use of community services." Tr. 386.

The ALJ recognized Dr. Slatick's conclusion that Plaintiff's "fetal alcohol spectrum disorder would likely cause certain lifelong intellectual deficits." Tr. 20. Relying on Dr. Slatick's test results, the ALJ stated, "These deficits include the claimant's 'extremely low' communication abilities and 'low average' general cognitive ability." Tr. 20. The ALJ went on to say that Plaintiff's "subsequent part-time work activity tends to undermine the notion that the claimant's mental deficits are *disabling* – but it is nevertheless reasonable to restrict him to simple unskilled tasks involving limited social interaction based on the raw scores cited above." Tr. 20.

Relying on the regulations governing measurement of children's limitations, Plaintiff argues that Dr. Slatick found that his limitations were marked in the areas of communication, functional academics, self-direction, leisure activity, social behavior, community use, home

living, health and safety, and self-care. Pl. Op. Br. 5 (citing 20 C.F.R. §416.926a(e)(2)). He

argues that the test results show that his ability to speak, write, converse, and communicate were

extremely or at least markedly limited, as was his ability to interact socially and protect himself

from harm. *Id.* at 5-6. Plaintiff argues that the ALJ erred in finding only moderate limitations in

the four broad areas of functioning. *Id.* at 6 (citing Tr. 16-17). Plaintiff argues that the ALJ's

findings were not consistent with the record and that substantial evidence does not support the

ALJ's analysis of Dr. Slatick's findings. *Id.* Plaintiff argues that his part-time work is insufficient

to discount Dr. Slatick's findings. *Id.* He points to his hearing testimony that he was limited to

part-time work because he moved too slowly and that he had trouble understanding things. *Id.*

(citing Tr. 37). Plaintiff also argues that the ALJ erred in failing to articulate the supportability

and consistency of Dr. Slatick's report. *Id.*

   Defendant first argues that the ALJ was not required to treat Dr. Slatick's findings as a

medical opinion "because Dr. Slatick did not offer an opinion concerning Plaintiff's functional

limitations and his evaluation does not contain an assessment of Plaintiff's work-related

limitations[.]" Def. Br. 4, ECF 14. The regulations describe three categories of medical evidence.

First is objective medical evidence, which includes "medical signs" and "laboratory findings." 20

C.F.R. § 404.1513(a)(1). "Psychiatric signs are medically demonstrable phenomena that indicate

specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory,

orientation, development, or perception, and must also be shown by observable facts that can be

medically described and evaluated." *Id.* § 404.1502(g). Second is a medical opinion, which "is a

statement from a medical source about what [a claimant] can still do despite [their]

impairment(s) and whether [they] have one or more impairment-related limitations or restrictions

in" specified areas. *Id.* § 404.1513(a)(2). One such area is the "ability to perform mental

demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii). The third category is "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

The Court concludes that Dr. Slatick's report does not meet the definition of a medical opinion under the current regulations. A medical opinion must both state what a claimant can still do despite their impairments and whether their impairments cause limitations. *Id.* § 404.1513(a)(2). Dr. Slatick's report discusses ways in which Plaintiff's fetal alcohol spectrum disorder limits his functioning, relying on both a clinical interview and objective testing. But it does not opine on the specific mental limitations laid out in the regulation. And it does not opine on what Plaintiff can still do despite his diagnosis. Other district courts addressing this issue have found that such medical reports do not qualify as medical opinions under the current regulations. *E.g.*, *Rodin v. Comm'r of Soc. Sec.*, No. 1:21-CV-00900-SAB, 2023 WL 3293423, at *15-*18 (E.D. Cal. May 5, 2023) (reviewing caselaw); *Michael H. v. Saul*, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021). Instead, Dr. Slatick's report falls into the category of "other medical evidence," because it includes judgments about the nature and severity of Plaintiff's impairment, his medical history, clinical findings, and a diagnosis. Because it is not a medical opinion under the regulations, the ALJ was not required to evaluate it using the criteria for evaluating medical opinions.

Plaintiff appears to argue that the criteria for evaluating medical opinions also apply to other types of medical evidence. *See* Pl. Reply 3-4, ECF 15 (citing *Linda F. v. Saul*, No. C20-

5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Krampitz v. Saul*, No. 20-35440, 2021 WL 1175300 (9th Cir. Mar. 29, 2021)). Plaintiff's authority is not persuasive. Plaintiff highlights language from *Linda F.* regarding assessment of a "medical opinion or finding." *Id.* at 4. However, the "finding" referred to in *Linda F.* is a prior administrative medical finding. 2020 WL 6544628, at *2. The regulation governing consideration of medical opinions also applies to prior administrative medical findings. 20 C.F.R. § 404.1520c. The regulation does not state that it applies to the other categories of medical evidence. As other courts have recognized, in revising the regulations, Congress deliberately narrowed the definition of a medical opinion. *See Michael H.*, 2021 WL 2358257, at *6. There is no basis to conclude that Congress intended the regulations governing the interpretation of medical opinions and prior administrative findings to apply to other types of medical evidence. Next, *Burch* merely stands for the proposition that the ALJ must consider relevant medical findings in the record. 400 F.3d at 681. Finally, in *Krampitz*, the Ninth Circuit held that the ALJ did not err in concluding that the claimant's counselors did not provide function-by-function limitations, and did not err in declining to discuss the opinions of medical providers whose "evaluations neither identified any specific functional limitations nor conflicted with the ALJ's RFC determination." 2021 WL 1175300, at *1-*2.

Plaintiff also points to the regulations addressing how to translate comprehensive standardized test scores into degrees of functional limitation for disabled children. Pl. Op. Br. 5 (citing 20 C.F.R. §416.926a(e)(2)). Defendant argues that the regulation does not apply here because Plaintiff was 29 when Dr. Slatick examined him and 26 on his alleged onset date. Def. Br. 7. Plaintiff replies that "Fetal Alcohol Syndrome is [a] group of conditions that can occur in a person who was exposed to alcohol before birth. Those conditions can last a lifetime with not

much improvement in the functional limitations of the person suffering from that disease[.]" Pl. Reply 5 n.3. The Court agrees that the regulation governing children does not apply to Plaintiff. Plaintiff was not a child at any point during the relevant period. His condition is lifelong, but he did not assert that he was disabled as a child. The child disability regulation does not provide a basis to transform Dr. Slatick's findings into the functional limitations utilized by the Commissioner.

Because Dr. Slatick's report is not a medical opinion, the ALJ did not need to address its supportability or consistency. The ALJ did use Dr. Slatick's findings to formulate the RFC, and he addressed how Dr. Slatick's findings compared to other evidence in the record. The ALJ considered Dr. Slatick's findings that Plaintiff had "extremely low" communication abilities and "low average" general cognitive ability. Tr. 20. He limited Plaintiff to simple unskilled tasks involving limited social interaction. Tr. 20. He rejected more severe limitations because Plaintiff worked part-time after he was evaluated by Dr. Slatick. Tr. 20. The ALJ also considered the state agency psychological consultants' conclusion that Plaintiff's neurodevelopmental disorders were not severe. Tr. 19. He noted some evidence in favor of that conclusion, including Plaintiff's mother's statement that Plaintiff could do chores, prepare meals, use public transportation, and be polite to guests. Tr. 19-20 (citing Tr. 469-470). The ALJ rejected the finding of nonseverity because it failed to account for Dr. Slatick's findings. Tr. 20.

Plaintiff argues that substantial evidence does not support the ALJ's conclusion. Pl. Reply 3 n.2. Plaintiff points to his testimony at the hearing that he could only do part-time work because he moved too slowly. Tr. 37. At his hearing, Plaintiff explained that "since my accident back in 2015, they could tell I was moving slowly, so they would always cut down my hours so that productivity wouldn't be too bad." Tr. 37. But the "accident" Plaintiff referred to was his left

ankle injury. Tr. 472 (stating that symptoms began in February 2015), 370 (stating that Plaintiff had ankle surgery in March 2015). Per his own testimony, Plaintiff's slowness was not due to his mental impairments. Plaintiff did also state that he had trouble understanding things and that supervisors sometimes told him he did something incorrectly because he was having trouble understanding. Tr. 37. But he testified that he was never fired for having trouble understanding. Tr. 38.

The ALJ was correct that Plaintiff worked after Dr. Slatick's 2018 exam. Plaintiff testified that he worked at Whole Foods from April 2018 to May 2020. Tr. 34. He found the job online on Indeed and applied through the website. Tr. 33. He left the job because his mother was diagnosed with cancer during the pandemic, and he did not want to expose her to the virus. Tr. 34. He was living with his parents. Tr. 34. He could take the bus to work, and he memorized the bus schedule. Tr. 36. His parents confirmed with him that he had what he needed and that he remembered when the bus would be there. Tr. 36-37. Based on this evidence, the ALJ reasonably concluded that Plaintiff's cognitive and adaptive abilities were greater than portrayed in Dr. Slatick's report. Plaintiff's family members told Dr. Slatick that Plaintiff struggled to do basic tasks such as finding phone numbers on the internet, sending emails, and completing forms for business services. Tr. 380. Plaintiff's own testimony shows that he was able to find a job opening online, apply for the job, and get hired. He did not leave the job because he was incapable of performing it but out of concern for his mother's health.

As Defendant notes, the ALJ also considered Dr. Slatick's findings in determining Plaintiff's degree of limitation in the four broad areas of functioning. Def. Br. 5 (citing Tr. 16-17). In finding Plaintiff moderately limited in the area of understanding, remembering, or applying information, the ALJ noted Plaintiff's report that he sometimes needed help

understanding spoken instructions, but usually had no trouble following written instructions. Tr. 16. The ALJ also noted that Plaintiff's perceptual reasoning was in the "low average" range and his processing speed was "borderline," while his verbal comprehension and working memory were average. Tr. 16. In finding Plaintiff moderately limited in interacting with others, the ALJ noted that Plaintiff indicated that he interacted with other people daily in person or on the phone and that he had only had issues with one supervisor. Tr. 16. The ALJ recognized that Dr. Slatick found that Plaintiff's speech, vocabulary, listening, conversation, and nonverbal communication skills were in the "extremely low" range. Tr. 16.

In finding Plaintiff moderately limited in his ability to concentrate, persist, or maintain pace, the ALJ relied on Plaintiff's estimate that he could pay attention for "about an hour at a time" and his report that he usually finished what he started. Tr. 16. The ALJ also noted that Plaintiff graduated from high school with a regular diploma but modified coursework. Tr. 16. The ALJ recognized Dr. Slatick's findings that Plaintiff's processing speed was well below average but that his ability to sustain attention and concentration and exert mental control were within the average range. Tr. 16-17. Finally, in finding Plaintiff moderately limited in his ability to adapt or manage himself, the ALJ noted that Plaintiff reported a varying ability to handle stress but a good ability to handle changes in routine. Tr. 17. The ALJ also noted that Plaintiff denied problems with personal care and stated that he could prepare his meals, do chores, go shopping, and manage his finances. Tr. 17. The ALJ recognized Dr. Slatick's findings that Plaintiff's adaptive abilities were lower than almost all individuals his age. Tr. 17.

The ALJ thus weighed Dr. Slatick's findings against other evidence in the record that diverged from those findings. The ALJ reasonably noted that Plaintiff's own testimony described a higher level of functioning than Dr. Slatick's testing. The ALJ also noted that Plaintiff's

mother reported in 2020 that Plaintiff could do chores, prepare his own meals using kits or frozen meals, and take the bus. Tr. 19 (citing Tr. 469). In that same report, Plaintiff's mother indicated that Plaintiff did not need assistance with basic hygiene and grooming. Tr. 467. In short, Plaintiff's own testimony and more recent testimony from his mother showed a higher level of functioning than both the reports Plaintiff's family gave to Dr. Slatick in 2018 and the results of Dr. Slatick's testing. Faced with this inconsistency, the ALJ reasonably found that Plaintiff was less limited than Dr. Slatick's report indicated. The ALJ also adequately explained his evaluation of the report. The ALJ did not err in his handling of Dr. Slatick's report.

## II.    RFC Assessment

The RFC is the most a person can do, despite his or her physical or mental impairments. 20 C.F.R. § 404.1545(a). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). An "RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

Plaintiff argues that the RFC was defective because although it stated that he would be off-task up to 10% of an 8-hour workday beyond normal breaks, it did not specify that the additional time off-task would be scattered throughout a normal workday. Pl. Op. Br. 7. In

posing the hypothetical to the VE, the ALJ stated that "time off task in addition to normal breaks would be up to 10% scattered throughout a normal workday." Tr. 42. The VE stated that with this limitation and the other specified limitations, the hypothetical individual could work as a small parts assembler, marker, or electrical accessories assembler. Tr. 43. The VE explained that being off-task 10% of the time was acceptable, "but understanding that six minutes per hour but it's spread over an hour of time as a moment here and a moment there, first is[3] a group of consecutive minutes." Tr. 44-45.

Defendant argues that the omitted phrase was an explanation of what the limitation meant rather than a term of the limitation. Def. Br. 9. Defendant also argues that the omission of the phrase "scattered throughout a normal workday" cannot be harmful error because the step five finding is consistent with both the RFC and the hypothetical. *Id.* Plaintiff asserts that "the ALJ's limitation in his written decision could include time periods where the full six minutes or more would continually occur where the claimant would be off-task." Pl. Op. Br. 7. Plaintiff argues that with that interpretation, he would not be employable. *Id.* (citing *Popa v. Berryhill*, 872 F.3d 901, 908 (9th Cir. 2017)). Because the record establishes that the ALJ and the VE had the same understanding of the limitation, and that understanding is the only one consistent with the record, the Court concludes that the ALJ's omission of the phrase "scattered throughout the workday" is not harmful error.

Plaintiff argues that under *Popa*, he is disabled. *Id.* In *Popa*, the claimant's counsel asked the VE if any jobs would be available if the hypothetical person described was "'off task 10 percent' of the time." 872 F.3d at 905. The VE responded that "'if the person is off task six

---

[3] The Court agrees with Defendant that "first is" is likely a transcription error for "versus." *See* Def. Br. 10 n.5.

minutes out of every hour,' she could not perform work that exists in significant numbers in the national economy because the person 'would not be competitively employable.'" *Id.* at 905. After concluding that the ALJ erred in discounting two medical opinions, the Ninth Circuit stated that this error "permeated her hypothetical to the vocational expert regarding the availability of a significant number of jobs in the national economy that Popa could perform." *Id.* at 908. The Ninth Circuit concluded that based on the VE's testimony, Plaintiff was not competitively employable, so the case should be remanded for an award of benefits. *Id.*

Defendant correctly points out that the result in *Popa* is not controlling here because it involved a different hypothetical. Def. Br. 10 n.6. The hypothetical in *Popa* was different from the hypothetical in this case. *Compare* 872 F.3d at 905 *with* Tr. 42. And unlike the VE in *Popa*, the VE in Plaintiff's case testified that Plaintiff *would* be employable if he was off task 10% of the time, as long as that time was scattered throughout the workday. Tr. 44-45. Further, unlike in *Popa*, the ALJ here did not err in his handling of the medical evidence. The result in *Popa* does not compel the same result here.

Plaintiff also relies on *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023). In *Leach*, the ALJ determined that the claimant had certain limitations that had not been included in the hypothetical posed to the VE. 70 F.4th at 1256-58. First, the ALJ determined that the claimant was limited to work requiring "little or no judgment." *Id.* at 1256. The ALJ's hypothetical did not contain that limitation, but the error was harmless because the VE identified only unskilled jobs, which are jobs that require little or no judgment. *Id.* Second, the ALJ determined that the claimant was limited to following "short, simple instructions." *Id.* The hypothetical posed to the VE only referenced "simple job instructions." *Id.* The Ninth Circuit found the error harmful because two of the jobs the VE identified had a reasoning level of two, which requires the ability

to follow detailed instructions. *Id.* Third, the ALJ determined that the claimant required "a work environment that was predictable and with few work setting changes." *Id.* at 1257 (emphasis omitted). In the hypothetical posed to the VE, however, the ALJ referenced a person who "can work in an environment with occasional changes to the work setting." *Id.* (emphasis omitted). The Ninth Circuit held that the ALJ's formulation did not accurately reflect the claimant's limitations because "'[o]ccasional' changes may, over time, amount to more than 'few' changes." *Id.* at 1258. The Ninth Circuit concluded that while "an ALJ need not use identical wording when describing a claimant's residual functional capacity and when posing a question to the vocational expert," the limitations may not be "materially altered." *Id.*

Here, in posing a hypothetical to the VE (the only hypothetical posed to the VE), the ALJ stated, "time off task in addition to normal breaks would be up to 10% scattered throughout a normal workday." Tr. 42. The VE stated that "the 10% being off task, certainly is within the current employer tolerance of individuals being off task." Tr. 44. The VE clarified that "the being off task currently employers are tolerating up to about 10%, but understanding that six minutes per hour but it's spread over an hour of time as a moment here and a moment there, first is [sic] a group of consecutive minutes." Tr. 45. Thus, the ALJ and the VE had the same understanding of the limitation.

Defendant argues that *Leach* is inapposite because here there is no disparity between the RFC the ALJ created and the hypothetical posed to the VE. Def. Br. 10. Plaintiff is correct that in theory, the limitation in the RFC could allow for situations in which the time off-task occurred all at once, which the VE testified would not be acceptable to employers. But the hearing shows that the ALJ and the VE understood that any time off-task would be scattered throughout the workday. Beyond the consistent and explicit treatment of the limitation during the hearing, the

record does not support Plaintiff's argument that he could be off-task in continual six-minute increments. Plaintiff points to no evidence supporting that interpretation of the limitation, and there is no basis for the Court to conclude that the ALJ interpreted the limitation in that manner.

Because no evidence supports Plaintiff's hypothetical alternative interpretation of the limitation, there is no basis to remand the case for further proceedings. The RFC is not ambiguous when viewed in the context of the record. The Court notes that in other cases, ALJs have included the language "scattered throughout the workday" when defining an off-task limitation in the RFC. *E.g.*, *Charlene S. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-CV-00545-HZ, 2023 WL 3002395, at *2 (D. Or. Apr. 18, 2023); *Tabetha M. v. Comm'r Soc. Sec. Admin.*, No. 6:22-CV-00711-AR, 2023 WL 6380022, at *1 (D. Or. Sept. 29, 2023). On a less clear record, this issue would have required a remand to resolve. Because the record here is consistent on this issue, no remand is necessary. The ALJ's error was a scrivener's error and was not harmful. *See Bamforth v. Colvin*, No. C13-5618BHS, 2014 WL 2711827, at *3 (W.D. Wash. June 16, 2014) ("Based on the record as a whole, and the fact that the ALJ only posed one hypothetical to the VE, it is reasonable to assume the ALJ intended plaintiff's RFC finding to include the limitation to simple, repetitive tasks. The failure to include this limitation appears to be a scrivener's error."). The ALJ did not err in concluding that Plaintiff was not disabled.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:   January 30, 2024       .

MARCO A. HERNANDEZ
United States District Judge